Simon H. Scheuer v. Commissioner.
Scheuer v. Commissioner
Docket No. 109014.
United States Tax Court
1943 Tax Ct. Memo LEXIS 326; 1 T.C.M. (CCH) 1016; T.C.M. (RIA) 43206; May 4, 1943
*326 H. H. Nordlinger, Esq., 420 Lexington Ave., New York City, for the petitioner. Ellyne E. Strickland, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income taxes for the calendar years 1937 and 1938 in the respective amounts of $2,203.05 and $3,510.02. The petitioner contends the Commissioner erred in including in his taxable income the unpaid interest due on certain notes of 42-44 West 39th Street Corporation. As to other matters covered by the Commissioner's determination no error is alleged. Findings of Fact Petitioner filed his income tax returns for the years 1937 and 1938 with the Collector for the second district of New York. He kept his books and filed his return on an accrual basis. During those years, petitioner was Treasurer of the 42-44 West 39th Street Corporation, the capital stock of which consisted of 200 shares, held as follows: 50 shares by Ralph Blumenthal 50 shares by Milton Blumenthal 100 shares by petitioner and his wife, as trustees for the benefit of two of their children. The corporation owned, as its sole substantial asset, a loft building in New York City, occupied *327 exclusively by tenants engaged in the millinery trade. The land was acquired and the building erected in 1926, when prices were high. The property was mortgaged in the principal sum of $855,000 as of December 31, 1937, reduced to $830,000 by December 31, 1938, and the corporation was required to amortize this mortgage at the rate of $17,500 annually. In 1937, the value of the property was $1,049,000, and in 1938, $1,039,000, and at no time during those years could it have been sold for more than $180,000, subject to the mortgage. The corporation also owed, as of December 31, 1937, notes payable in the principal sum of $490,000, and as of December 31, 1938, $448,000, and interest accrued since July 1, 1932, as of the respective dates, in the amounts of $177,736.30 and $205,755.99. One-half of these notes was owned by members of the Scheuer family, or legal entities related thereto, controlled by petitioner and his wife, and one-half was owned by the Rambee Company, a corporation controlled by the Blumenthal family. As of December 31, 1937 the past-due principal of these notes amounted to $233,000, and as of December 31, 1938, to $281,000. During the taxable years, the vacancies in *328 the building did not average more than 3 percent or 4 percent, compared to an average percentage of vacancies in loft buildings in New York City of from 10 to 14 percent. The corporation had a net income, for tax purposes, of $1,739.49 in 1937, and $3,950.65 in 1938, after deducting from gross income the interest payable upon its notes and a proper amount for depreciation. Up until 1932, payments were made on the interest due on the notes, but in that year no interest was paid in cash. Petitioner, representing the Scheuer interests, and Ralph Blumenthal, representing the Blumenthal family, represented the holders of all of the outstanding notes. Ralph Blumenthal was president and petitioner was treasurer of the corporation. In 1932, they met and, in their dual capacities as officers of the corporation and representatives of all of the noteholders, entered into an agreement that it was no longer possible to continue paying interest on the overdue notes and at the same time pay anything upon the principal; that it was more important that the principal be repaid than that any payment be made of interest; and that thereafter all the payments which were made on the notes were to be applied *329 to the past-due principal amounts of the notes, and payment of the interest indefinitely postponed. This agreement was put into effect immediately, and has been consistently followed from that time on. It was in effect during the taxable years in question. The payments by the corporation to the holders of its notes which were made in 1937 and 1938 were sufficient in amount to have paid currently accruing interest, but were applied pursuant to the agreement, to the principal of notes several years past due. The income of the corporation was not sufficient during the taxable years to pay in full the past-due principal due upon the notes. At the rate at which payments were being made on the notes during the taxable years, under the favorable conditions then prevailing, it would have required twelve to fifteen years for the principal to be paid in full, even before the payment of any interest. It is alleged in the petition and admitted by the respondent that interest became due and payable to petitioner on the notes in 1937 in the amount of $13,730.66, and in 1938, interest in the amount of $12,758.72. The corporation accrued and deducted in its income tax return the amounts of the *330 interest owed for those years on its notes; but petitioner did not accrue or pay tax on the amount of interest due him. There was, in 1937 and 1938, no such reasonable expectancy of receipt of the interest by petitioner as would require him to include it in his taxable income. Opinion KERN, Judge: The theory upon which petitioner acted in failing to include in his taxable income for 1937 and 1938 the amount of interest due but unpaid on notes issued by 42-44 West 39th Street Corporation, was that he could not expect to receive such payments at least for a period of from twelve to fifteen years after they were due, if at all, and that this did not constitute such a reasonable expectation of payment as would require him to accrue and pay the tax on such amounts. The respondent contends that petitioner was required to accrue such amounts, first, because the corporation was able to and did pay amounts at least equivalent to the amount of interest currently due on the notes, although such payments were credited by agreement to the principal of the notes, rather than to that interest; and, further, that the corporation deducted the accrued and unpaid interest in its income tax returns *331 for the years involved. In 1932, the officers of the corporation decided that the financial condition of the company was so precarious that to continue paying interest on the corporate notes would be simply to delude the noteholders into thinking they were receiving income, rather than a return of principal, and that common prudence required that such payments as the corporation was able to make on the indebtedness represented by the notes should be applied not to the payment of interest but to reduce the past due principal thereof, and that plan was followed thereafter. The validity of that agreement is unquestioned. No interest was, in fact, ever paid after 1932, and throughout that period, and including the taxable years, the petitioner knew he could not reasonably expect to receive the interest before the expiration of twelve to fifteen years, depending upon economic conditions, and at the same time have a repayment of the past due principal of these notes. Where a creditor is unable to collect the interest upon an indebtedness without jeopardizing his principal investment, such interest is not accruable income to him. See . *332 It would follow that where an arrangement is made between debtor and creditor whereby payments are to be made on the past due principal of obligations, and as a result the debtor is unable to pay the current interest due thereon, such interest is not accruable income to the creditor. In this case the debtor was unable to pay the interest during the taxable years (and at the same time make payments upon past due principal), but there was a possibility that it could pay the interest at some time in the remote future, and, if conditions remained the same, a probability that it could pay such interest within twelve or fifteen years. Therefore, the question here is whether the possibility of receiving the interest from twelve to fifteen years after it became due was such a "reasonable expectation" of its receipt as to subject it to taxation as accruable income to the creditor in the years of its accrual as a deductible expense by the debtor, within the rule laid down in , and other cases following it. The element of time in connection with the expectation of receipt is one which sets this case somewhat *333 apart from the factual background of the cases in which this general subject has been discussed. However, it is an element which has received some thought in the consideration by the Courts of the problem. In , the Court said: The government should not tax under the claim of income that which is not received during the taxable year and in all probability will not be paid within a reasonable time thereafter.
And, in , it was said: The basis of the accrual system of accounting is that obligations incurred in the normal course of business will be discharged in due course. (Italics ours.) Under the circumstances in this case, there was no possibility under the agreement entered into between the debtor and its creditors in 1932 that the interest upon the notes would be paid in due course. The notes which were reduced or retired during the taxable years were long past due, and the possibility that the corporation would be able to make some payment of the interest due on them at some time twelve *334 to fifteen years in the future was not and should not have been the source of much optimism to the noteholders. Their expectation of receiving the whole of their principal was limited to a possibility that they might receive it, not when due, but many years thereafter, and even this depended upon a continuation of the unusually favorable rate of occupancy which then prevailed. Beyond that, their hope of receiving any interest was necessarily so remote in point of time that we do not believe it can be called such a reasonable expectation of payment as to require its accrual for tax purposes. The fact that the corporation was allowed to deduct the amount of the interest from its taxable income is irrelevant to this question. Decision will be entered under Rule 50.